**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER MERMIGAS, individually and on behalf of all those similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **No. 1:23-cv-3238** ) |
| | ) **Class Action** |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | ) ) **Jury Trial Demanded** |
| Defendant. | **)** **)** |

_____

**CLASS ACTION COMPLAINT**
_____

Plaintiff, CHRISTOPHER MERMIGAS ("Plaintiff" or "Mermigas"), by his undersigned counsel, Keith L. Gibson and Bogdan Enica, on behalf of himself and all those similarly situated, brings this Class Action Complaint against ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY ("Defendant" or "Allstate"), alleging as follows:

**INTRODUCTORY STATEMENT**

1.      This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendant ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY for their breach of contract and fraudulent conduct in improperly splitting claims arising out of one occurrence in order to charge

consumers higher rates for its homeowners' insurance and circumvent its own claim rate protections sold to consumers.

2.     This action arises from the deceptive, unfair and misleading practices by Allstate to improperly split claims arising from one occurrence so as to improperly raise rates and impose claims surcharges on its policyholders.

3.     Plaintiff is one of the many consumers who purchased homeowners' insurance from Defendant with the expectation that one occurrence would be treated as one claim by Defendant.

4.     Plaintiff is one of many consumers that purchased Defendant's Enhanced Package, which included Claim Rate Guard, which was intended to provide protections for consumers' policy discounts, and specifically related to the discounts based on the number of claims made on the policy of insurance.

5.     During the Class Period (defined below), Defendant had a practice to create multiple separate claims arising from one occurrence under its homeowners' insurance policies and, on the basis of having multiple claims, increase policyholders' rates as if there were multiple separate and distinct claims.

6.     Defendant breached its policies of insurance by increasing its insurance rates charged to customers based on the definition of occurrence in its homeowners' insurance policies.

7.     Plaintiff, on behalf of himself and a Class of similarly situated individuals, seek recovery of damages for Defendant's unfair and deceptive conduct under the Illinois Consumer Fraud Act and for breach of contract.

8.      Plaintiff also requests entry of an Order awarding injunctive relief and declaratory relief requiring cessation of the unfair and deceptive practices described in this Complaint.

## NATURE OF THE ACTION

9.      Plaintiff, Christopher Mermigas, on behalf of himself and all those similarly situated seeks damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendant, for breach of contract, common law fraud, negligent misrepresentation, unjust enrichment, and violation of Illinois Consumer Fraud Act.

## PARTIES

10.      Plaintiff, Christopher Mermigas, is a citizen of Illinois who resides in Westmont, Illinois.

11.      Plaintiff brings this action on their behalf and on behalf of all other persons similarly situated individuals ("Class Members").

**12.**      Defendant, Allstate Vehicle and Property Insurance Company, is an Illinois registered insurance company with its headquarters and principal place of business in the County of Cook, Village of Northbrook, State of Illinois. It is a subsidiary of the Allstate Corporation, a Delaware corporation, with its principal place of business in Northbrook, Illinois.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum

or value of $5,000,000, exclusive of interest or costs; there are more than 100 members in the proposed class; and at least one member of the class are citizens of a state different from Defendant.

14.     This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and do business in Illinois, including this District.  Defendant marketed and sold policies of insurance in Illinois and Defendant has sufficient minimum contacts with this State and/or has sufficiently availed itself of the markets in this State to render the exercise of jurisdiction by this Court permissible.

15.     Venue is proper in this District under 18 U.S.C. § 1391 (a) and (b) because a substantial part of the events giving rise to Plaintiff's claim occurred while he resided in this District. Defendant's principal place of business is in this District.

## STATEMENT OF FACTS

### THE PLAINTIFF

16.     Plaintiff, Christopher B. Mermigas, currently resides in a two-story townhome at 200 Carlisle Avenue, Westmont, Illinois 60559 ("Subject Property").

17.     Plaintiff purchased the Subject Property in 2016 and he is the sole owner of the Subject Property.

18.     When Plaintiff purchased the Subject Property in 2016, he contacted an Allstate insurance agent, Heather Beck, about obtaining homeowners insurance for the Subject Property.

19.     At that time, Ms. Beck's insurance agency was located at 6358 S. Cass Avenue, Westmont, Illinois 60559. Ms. Beck's telephone number was (630) 581-0103 and

her email address was heatherbeck@allstate.com.

20.    Upon information and belief, Ms. Beck was a contracted insurance agent for Defendants and authorized to sell policies of homeowner's insurance to consumers on behalf of Allstate, including to Plaintiff.

## PLAINTIFF'S ALLSTATE HOMEOWNERS INSURANCE POLICY

21.    Plaintiff purchased a House and Home Insurance Policy from Allstate Vehicle and Property Insurance Company for the Subject Property ("Insurance Policy"). (See attached Exhibit 1.)

22.    The Insurance Policy had an effective date of June 15, 2016.[1]

23.    The initial term for the Insurance Policy was one year, from June 15, 2016, to June 15, 2017.

24.    The Insurance Policy number was 962 135 570.

25.    The Insurance Policy policyholder was Christopher B. Mermigas.

26.    The Insurance Policy Allstate agency was Heather Beck, 6358 S. Cass Avenue, Westmont, Illinois 60559.

27.    The total premium for the initial Insurance Policy term was $595.28.

28.    The Insurance Policy listed a number of premium discounts including for "Claim Free" in the amount of $100.75.

29.    Plaintiff purchased the Enhanced Package as part of the Insurance Policy.

30.    Plaintiff paid money to Defendant to include the Enhanced Package as

---

[1] Plaintiff later added automobile insurance coverage with Allstate in 2022.

5

part of the Insurance Policy.

31.     The Enhanced Package provided extra benefits to the Plaintiff including Claim RateGuard, which was represented to be a feature that "will help you keep your discounts and avoid a premium increase in the unfortunate event that you have a claim. If you file a claim to which we apply the Claim RateGuard feature, you will not lose the Claim Free Discount, if you already have that discount on your policy."

32.     Plaintiff's Insurance Policy defined "Occurrence" as follows:

**Occurrence –** means an accident, including continuous or repeated exposure to the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

33.     Plaintiff's Insurance Policy does not include "Claim", "Claim RateGuard" "Multiple Claims", or any variation of "Claim" as a defined term.

34.     Plaintiff's Insurance Policy was renewed annually by Defendant's submission of a Renewal House & Home Policy Declaration ("Renewals"). (*See* attached Exhibit 2).

35.     Until 2022, Plaintiff's Renewals all contained a Claim-Free Discount of varying amounts.

36.     From 2016 to 2022, Plaintiff paid extra for claim forgiveness on his Policy.

37.     Until 2022, Plaintiff's Renewals all contained the Enhanced Package including Claim RateGuard feature.

38.     Until 2022, none of Plaintiff's Renewals contained a Claim Rating Surcharge.

39.     Plaintiff did not have any claims on his Insurance Policy from 2016 until an

occurrence on February 6, 2022, as described further herein.

40. On March 2, 2022, Defendant issued an Amended House & Home Policy Declaration. (*See* attached Exhibit 3).

41. The March 2nd Amended Declaration contained a "Claim-Free" Discount of $197.35.

42. The March 2nd Amended Declaration contained no Surcharge or any other charge for multiple claims.

43. On April 6, 2022, Defendant issued a Renewal House & Home Policy Declarations for the policy period beginning June 15, 2022, through June 15, 2023. (*See* attached Exhibit 4).

44. The April 6th Renewal did not include a "Claims-Free" Discount.

45. The April 6th Renewal included a Surcharge for "Claim rating" of $225.72.

46. The total premium charged in the April 6th Renewal for the June 15, 2022, to June 15, 2023, policy period was $1,938.94.

47. The April 6th Renewal included Plaintiff's purchase of the Enhanced Package including "Claim RateGuard" and "Claim-Free Bonus".

48. On April 19, 2022, Defendant issued an Amended House & Home Policy Declaration. (*See* attached Exhibit 5).

49. The total premium listed in the April 19th Amended Declaration was $1,716.53.

50. The April 19th Amended Declaration included a Surcharge for "Claim rating" of $189.13.

51. For the policy period of June 15, 2022, through June 15, 2023, Plaintiff paid a total premium that did not include a "Claim-Free Bonus".

52. For the policy period of June 15, 2022, through June 15, 2023, Plaintiff paid a total premium that included a Surcharge for Claim rating of $189.13.

53. Plaintiff terminated his Insurance Policy with Allstate effective April 15, 2023.

## THE OCCURRENCE

54. On February 6, 2022, there was water damage to the Subject Property and a neighbor's residence that shares a common wall ("Occurrence")

55. Plaintiff promptly reported the water damage to Allstate.

56. The water damage was determined to have been caused by a leak due to a failed pipe that burst behind a kitchen cabinet leading to the dishwasher in the Subject Property.

57. Plaintiff's neighbor was a married couple named Ellen Emery and Brant Emery (the "Emery"). The Emery's property is located at 202 Carlisle Avenue, Westmont, Illinois 60559 (the "Emery Property").

58. In addition to the damage caused to the Subject Property, at the time of the leak, water from the failed pipe also damaged the Emery Property.

59. The failed pipe that burst caused damage simultaneously to the Subject Property and the Emery Property.

60. There was one cause of the damage to both the Subject Property and the Emery Property.

61.     The damage or loss caused by the failed pipe that burst on February 6, 2022, was one Occurrence as defined in the Plaintiff's Insurance Policy.

62.     In a letter to the Emerys dated February 14, 2022, Allstate determined that its insured, Plaintiff, was not negligent in causing the failed pipe and that the "incident was unexpected/unforeseen" and that there was "no prior knowledge of any issue to alert our insured until the pipe burst."  (See attached Exhibit 6).

63.     The February 14, 2022, letter also states Mermigas was not at fault for the "incident", stating that "Allstate have [sic] determined our insured as not found at fault to cause the pipe burst, however, at our insured's request, we are extending the additional protection coverage to cover your policy deductible. Please report your damage to your own policy for further handling."

64.     Plaintiff requested that his Allstate Insurance Policy cover the neighbor's loss as part of his claim.

## ALLSTATE'S CLAIM SPLITTING

65.     The Occurrence on February 6, 2022, arose out of one loss.  All of the damage to the Plaintiff's Property and the Emerys' Property resulted from a common loss event and from the same occurrence.

66.     The February 6th loss resulted in one occurrence as defined in the Insurance Policy.

67.     Allstate's February 14th letter to Plaintiff's neighbor, the Emerys, does not mention that the loss will be split into multiple separate and distinct claims.

68.     Defendant's website states that a claim is "A request to an insurance

company for recovery for a loss." https://www.allstate.com/tr/glossary.aspx.

69.     Defendant does not state a definition of a claim in its Insurance Policy.

70.     There are over forty (40) references to a "claim" in Defendant's Insurance Policy.

71.     Defendant's Insurance Policy does not refer its customers to its website for the definition of a claim.

72.     Plaintiff's Insurance Policy defined "Occurrence" as follows:

**Occurrence –** means an accident, including continuous or repeated exposure to the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

73.     Following the Occurrence, in June 2022, Allstate set up a claim to investigate and adjust the damage to Plaintiff's property (Claim #0658202460) and a separate claim to investigate and adjust the damage to the Emery's Property (Claim #0659087704).

74.     There is no basis in Plaintiff's Insurance Policy to split the February 6, 2022, Occurrence into two separate and distinct claims.

75.     Defendant's splitting of claims arising from one Occurrence allows it to impose its Surcharge for Claim Rating that improperly increases its policyholder's insurance premiums.

76.     After Defendant split Plaintiff's claim into two separate claims, Defendant imposed the Surcharge for Claim Rating of $189.13.

77.     Defendant's Surcharge for Claim Rating imposed on Plaintiff has no basis in Defendant's Insurance Policy and was an impermissible charge.

78.     Defendant's Surcharge for Claim Rating imposed on a loss arising from one occurrence is misleading, fraudulent and defies a reasonable consumer's expectations on when an increase in a policy premium may occur.

79.     Defendant's Enhanced Package including the Claim RateGuard service was intended to protect Plaintiff and Class members in the event of a claim arising from one Occurrence.

80.     Plaintiff and Class members purchased the Enhanced Package with the Claim RateGuard service under the reasonable expectation that it would provide protection for a claim arising out of one Occurrence.

81.     Defendant's standard policy and practice to split a loss arising from one Occurrence into multiple claims violated the protections offered by the Enhanced Package including Claim RateGuard service.

82.     By splitting the February 6, 2022, Occurrence into multiple claims, Defendant nullified the benefit of the Enhanced Package including Claim RateGuard purchased by Plaintiff and Class members.

83.     Defendant's policy of improperly splitting claims arising from one Occurrence under its policies of insurance violates its Enhanced Package including Claim RateGuard service and nullifies said Enhanced Package.

## PLAINTIFF'S DEPARTMENT OF INSURANCE CLAIM

84.     In November 2022, Plaintiff submitted a complaint to the Illinois Department of Insurance regarding Defendant's improper claim splitting. It was assigned complaint number IL 22-14804.

85. On February 9, 2023, Defendant submitted its Report to the Illinois Department of Insurance in response to Plaintiff's complaint. (*See* attached Exhibit 7)

86. On February 28, 2023, the Illinois Department of Insurance issued its finding. (*See* attached Exhibit 8).

87. Neither Defendant's Report nor the Illinois Department of Insurance cited any Illinois law or regulation of the Insurance Code in support of its findings.

## CLASS ALLEGATIONS

88. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

89. Plaintiff asserts the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

90. Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action as a class action, on behalf of the following classes (the "Class"):

Policy Class: Each person who entered into a House & Home Policy of Insurance with Defendant to provide insurance coverage for a home or other dwelling and who (a) submitted at least one eligible claim for coverage under the Policy of Insurance that arose from one occurrence or loss and (b) whose claim was split or divided into two or more separate claims under the Policy of Insurance during the Class Period.

Enhanced Package Class: Each person who entered into a House and Home Policy of Insurance with Defendant and purchased the Enhanced Package with the Claim RateGuard service.

91. The Class Period is defined as the limitations time period applicable under the claims to be certified.

92. The classes exclude counsel representing the class, governmental entities,

12

Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

93.     Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

94.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

95.     <u>Numerosity</u>: Thousands of consumers have been injured by Defendant's deceptive marketing practices, including Plaintiff. They all have purchased Defendant's House & Home policies of insurance products and paid a premium for it in reliance on the Defendant's representations.

96.     Each of the classes represented by Plaintiff have thousands of members and the joinder of all members is impracticable.

97.     <u>Typicality</u>: Plaintiff's story and his claims are typical for the class and, as the named Plaintiff, he is aware of other persons in the same situation. Plaintiff and the members of the Class sustained damages arising out of Defendant's illegal course of business.

98.     <u>Commonality:</u> Since the whole class purchased Allstate insurance products and such products are promoted and sold by the Defendant, the questions of law and fact

are common to the class.

99.    Adequacy: Plaintiff Mermigas will fairly and adequately protect the interests of each class they represent.

100.    Superiority: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## COUNT I: BREACH OF CONTRACT

101.    Plaintiff incorporates by reference the foregoing allegations of this Complaint as if fully re-written herein. Plaintiff asserts this count on his own behalf and on behalf of both Classes, as defined above, pursuant to Fed. R. Civ. P. 23.

102.    Plaintiff and member of each Class entered into contractual agreements with Defendant via the House & Home Policy issued by Defendant and accepted by Plaintiff and Class Members.

103.    In the Insurance Policy, Defendant agreed to accept responsibility for payments arising from an Occurrence, as defined in the Insurance Policy, subject only to the terms and conditions set forth in the Insurance Policy.

104.    However, when Plaintiffs and Class Members had an Occurrence as defined in the Insurance Policy, Defendant wrongfully split the loss into multiple separate claims based on the vague and ambiguous rationale of Allstate's unwritten "Stance" and "Standard Process".

105.    There is no contractual basis in its Insurance Policy for Allstate to split a loss arising from one Occurrence into two separate claims.

106.     Defendant breached its Insurance Policy with Plaintiff when it split the damages or loss arising from the February 6th Occurrence into multiple separate and distinct claims.

107.     Defendant breached its Insurance Policy with Plaintiff and the Enhanced Package with Claim RateGuard service sold to Plaintiff.

108.     As a direct and proximate result of Defendant's breach of contract, Plaintiff and the members of each Class suffered damages and are entitled to actual damages and costs.

## COUNT II: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND UNIFORM DECEPTIVE TRADE PRACTICES ACT

109.     Plaintiff incorporates by reference the foregoing allegations of this Complaint as if fully re-written herein. Plaintiff asserts this count on his own behalf and on behalf of all those similarly situated, as defined above, pursuant to Fed. R. Civ. P. 23.

110.     The Illinois Consumer Fraud and Uniform Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., provides protection to consumers by mandating fair competition in commercial markets for goods and services.

111.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

112.     The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

113.    Defendant is a "person" as defined by section 505/1(c) of the ICFA.

114.    Plaintiff and each member of each Class are "consumers" as defined by section 505/1(e) of the ICFA.

115.    Allstate's insurance policies constitute "merchandise" under the meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

116.    Defendant's misrepresentations and omissions regarding the definition of an occurrence and how a loss arising from one Occurrence will be interpreted under the Insurance Policy are deceptive and unfair acts and practices prohibited by Chapter 2 of ICFA.

117.    Defendant violated the ICFA when it misrepresented facts regarding the Claim RateGuard service offered under the Enhanced Package of its Insurance Policy. Accordingly, the misrepresentations were the central reason for consumers choosing to purchase Allstate insurance policies over other alternatives, and to pay a premium for it.

118.    Defendant's sale of the Claim RateGuard service offered under the Enhanced Package of its Insurance Policy failed to disclose that a loss arising from one occurrence under the Insurance Policy could be split into multiple separate and distinct claims.

119.    Defendant's failure to disclose that a loss arising from one occurrence under the Insurance Policy could be split into multiple separate and distinct claims is a material omission of fact that is misleading, deceptive and fraudulent.

120.    Defendant violated the ICFA when it misrepresented facts regarding the

definition of Occurrence in its Insurance Policy and how claims would be handled for a loss arising from one Occurrence. Defendant's practice of claim splitting for a loss arising from one occurrence as defined in the Insurance Policy is misleading, deceptive and fraudulent.

121.    Defendant's failure to define "Claim" in its Insurance Policy is a material omission that is misleading, deceptive and fraudulent.

122.    Defendant's failure to refer its customers to its own website as to the definition of a claim in a material omission that is misleading, deceptive and fraudulent.

123.    Plaintiff and members of the Class relied upon Defendant's misrepresentations and omissions when they purchased Allstate insurance policies.

124.    If Plaintiff and the Class had been aware of the true nature of its Claim RateGuard service offered under the Enhanced Package of Allstate's insurance policy, or the fact that Allstate would split claims arising from one Occurrence as defined by the Insurance Policy, he would not have purchased it.

125.    Defendant also violated section 510/2(a)(12) of the DTPA by representing a loss resulting from one Occurrence will be separated into multiple distinct claims under the Insurance Policy.

126.    Plaintiff and the Class reasonably relied on Defendant's misrepresentations and omissions when deciding to purchase the Enhanced Package including the Claim RateGuard offered by the Defendant for its Insurance Policy.

127.    Defendant's misrepresentations and omissions regarding the Enhanced Package including the Claim RateGuard feature were acts likely to mislead the Plaintiff

and the Class members acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of ICFA.

128.    Defendant's misrepresentations and omissions regarding the definition of an occurrence contained in Defendant's Insurance Policy were acts likely to mislead the Plaintiff and the Class members acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of ICFA.

129.    As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and the Class members have suffered harm in the form of monies paid for the Enhanced Package including the Claim Rate Guard feature because they paid more than what they would have otherwise paid had they know the true nature of the product.

130.    As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and the Class members have suffered harm in the form of monies paid for the Surcharge for Claim Rating imposed as a result of Defendant's improper claim splitting because they paid more than what they would have otherwise paid had they know the true nature of the product.

131.    Defendant's practices set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

## COUNT III: UNJUST ENRICHMENT

132.    Plaintiff incorporates by reference the foregoing allegations of this Complaint as if fully rewritten herein. As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23.

133. By paying the Surcharge for Claim Rating imposed following the Defendant's improper splitting of claims, Plaintiff and the Class members conferred a direct benefit to Defendant.

134. By paying for the Enhanced Package including the Claim RateGuard, Plaintiff and Class members conferred a direct benefit to Defendant.

135. Allstate policyholders that are members of the class continue to suffer injuries as a result of the Defendant's behaviors. If the Defendant does not compensate the Plaintiff and Class members, they will be unjustly enriched as a result of their unlawful acts or practices.

136. It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendant to retain said benefit, reap unjust enrichment.

137. Since the Defendant unjustly enriched themselves at the expense of the Instagram users, the Plaintiffs request the disgorgement of these ill-gotten money.

138. Due to Defendant's conduct, Plaintiff and the putative Class members are entitled to damages according to proof.

## COUNT IV: NEGLIGENT MISREPRESENTATION

139. Plaintiff incorporates by reference the foregoing allegations of this Complaint as if fully rewritten herein. As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23.

140. Defendant had a duty to be truthful in their commercial speech. In

convincing the Plaintiff to purchase its Insurance Policy, including the Enhanced Package with Claim RateGuard service, the Defendant made representations that it knew to be false, or negligently failed to examine the veracity of the affirmations.

141.    As a result of Defendant's negligent misrepresentations, Plaintiff and members of each Class suffered injury.

## COUNT V: COMMON LAW FRAUD

142.    Plaintiff incorporates by reference the foregoing allegations of this Complaint as if fully rewritten herein. As set forth above, the Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23.

143.    Defendant made false statements and omissions of material fact to the Plaintiff.

144.    Defendant's assertion that its Claim RateGuard feature will Plaintiff and Class Members keep their discounts and avoid a premium increase in the event of a claim was false.

145.    Defendant's definition of a "claim" contained on its website was false.

146.    Defendant's definition of an "Occurrence" contained in its Insurance Policy is false.

147.    Defendant's statements that its policies and procedures permitted it to split the Plaintiff's claim into multiple separate and distinct claims was false.

148.    Defendant made the false statements with the intent that Plaintiff and Class Members rely on said false statements to purchase the Enhanced Package including Claim

RateGuard feature.

149. Defendant's failure to include a definition of "claim" in its Insurance Policy was an intentional and knowing material omission of fact that was intended to induce Plaintiff to purchase the Enhanced Package including the Claim RateGuard service.

150. Plaintiff and the member of both Classes acted in reliance on Defendant's false statements to purchase the Enhanced Package including the Claim RateGuard feature.

151. Plaintiff suffered damages in the form of the payments made to Defendant for the Enhanced Package including Claim RateGuard feature.

152. Plaintiff suffered damages in the form of the payment of the Surcharge for Claim Rating charged to Plaintiff's insurance premium.

## DEMAND FOR JURY TRIAL

153. Plaintiff and those similarly situated demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Christopher Mermigas, individually and on behalf of all those similarly situated, respectfully requests that judgment be entered in his favor and in favor of those similarly situated as follows:

a. Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representative and with his counsel appointed as class counsel;

b. Declaring the Defendant in violation of each of the counts set forth above;

c.      Awarding the Plaintiff and those similarly situated compensatory, punitive, and treble damages;

d.      Awarding the Plaintiff and those similarly situated liquidated damages;

e.      Order the disgorgement of ill-gotten monies;

f.      Awarding the named Plaintiff a service award;

g.      Awarding pre-judgment, post-judgment, and statutory interest;

h.      Awarding attorneys' fees and costs;

i.      Awarding such other and further relief as the Court may deem just and proper.

Dated: May 23, 2023           Respectfully Submitted,

/s/ Keith L. Gibson
Keith L. Gibson, Esq.
IL Bar No.: 6237159
490 Pennsylvania Avenue, Suite 1
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan Enica, Esq.
Law Offices of Keith L. Gibson
FL Bar No.: 101934
66 West Flagler St., Ste. 937
Miami, FL 33130
Telephone: (305) 539-9206
Email: bogdan@keithgibsonlaw.com

*Attorneys for the Plaintiff and the Putative Class*